UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

TONIKA C. WEBSTER,

                Plaintiff,

     - against -                10 Civ. 4054(JGK)

MICHAEL ASTRUE COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.         <u>MEMORANDUM OPINION AND
ORDER</u>

————————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff, Tonika Webster, brings this pro se action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3), seeking reversal of a final determination of the Commissioner of Social Security ("Commissioner") that the plaintiff was not entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). In response, the Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to affirm the Commissioner's decision that the plaintiff is not entitled to DIB and SSI under the Social Security Act ("the Act").

    The sole issue on this motion is whether substantial evidence supports the Commissioner's finding that the plaintiff is not entitled to DIB and SSI under the Act because she is not disabled.

The plaintiff filed applications for DIB and SSI benefits on December 5, 2007.  (R. at 7.)  The applications were denied. Id.  The plaintiff filed a timely hearing request and received a hearing before the Administrative Law Judge ("ALJ"), Joseph K. Rowe, on June 8, 2009.  Id.  The ALJ considered the case de novo and issued a decision on June 29, 2009, denying the plaintiff's claim.  (R. at 7-12.)  The decision became the Commissioner's final decision on February 24, 2010, when the Appeals Council denied the plaintiff's request for review of the ALJ's decision. (R. at 1-3.)  This appeal followed.

## I.

The administrative record contains the following facts. The plaintiff was born on September 30, 1968.  (R. at 16.)  She completed school through the twelfth grade and earned her General Equivalency Degree.  (R. at 16-17, 52.)  The plaintiff also took computer classes at two business schools.   (R. at 17.)  The plaintiff testified that she worked primarily as a home healthcare worker until 2006, but had begun working in the same position again in December of 2008.  (R. at 19-22.)  In the previous fifteen years, the plaintiff worked as a Group Leader Assistant for a drug treatment program, and at her present position in home healthcare.  (R. at 64.)  The plaintiff also reported that she worked as a receptionist for a community

2

development business from June 1998 to September 2007.  (R. at 49.)

The plaintiff explained that her job as a home healthcare worker includes bathing the patients, and picking them up, cleaning, handling their mail, laundry and cooking for them. (R. at 22, 49, 66.)  The patient alleges that this job included about four hours of walking, and three to six hours of standing. (R. at 49, 66.)   In an undated disability report, the plaintiff claimed that she frequently lifted fifty pounds or more, however, in her work history report, dated March 13, 2008, she reported that the heaviest weight she lifted at this job was twenty pounds.  Id.

The plaintiff asserts that she became disabled in 2006 around the time she had her youngest son.  (R. at 21.)  The plaintiff reports that she is able to carry about ten to twenty pounds, and indicates in a Function Report that she is able to prepare meals on the stove, go grocery shopping, iron, clean, and do the laundry, sometimes with the help of her children. (R. at 26, 58.)  She claims that she can sit for about two to three hours and that she cannot stand for more than an hour without a problem.  (R. at 24.)

3

## II.

The plaintiff's relevant medical history includes several medical opinions.  These opinions will be noted in chronological order.

Dr. John A. Debello treated the plaintiff during the period of June 2006 through December 2007.  (R. at 110-118.)  On June 21, 2006, the plaintiff saw Dr. Debello complaining of pains in her toe.  (R. at 118.)  Dr. Debello reported that the plaintiff appeared "well developed, well nourished and with good attention to hygiene and body [habits]."  Id.  He observed that the plaintiff's right fifth toe showed evidence of a "rigid hammertoe deformity."  Id.  At that time, Dr. Debello discussed the possibility of surgical correction and x-rays in the future. Id.

On September 28, 2006, Dr. Debello performed an arthroplasty on the plaintiff.  (R. at 117.)  In a postoperative follow-up examination on October 3, 2006, Dr. Debello reported that the plaintiff was healing satisfactorily and that there were no signs of infection. (R. at 116.)  At the plaintiff's next postoperative exam, on October 9, 2006, she reported no complaints.  (R. at 115.)  The following week the plaintiff only complained that she could not wear her shoes.  (R. at 114.)

4

On October 30, 2006, the plaintiff complained of pain in her right foot, as well as odor and discoloration.  (R. at 113.) Dr. Debello prescribed an antifungal and administered an injection of steroids.  Id.

The plaintiff returned to Dr. Debello on December 7, 2006 complaining of arch pain in her feet.  (R. at 112.)  Dr. Debello noted that the plaintiff appeared "oriented, distressed, moderately overweight and somewhat tired," and diagnosed her with tendonitis.  Id.

About one year later, on December 13, 2007, the plaintiff again returned to Dr. Debello complaining of heel pain, this time in the left foot, trouble standing for periods of time and difficulty walking.  (R. at 110.)  Dr. Debello performed x-rays which indicated conditions consistent with heel spur syndrome and plantar fasciitis, as well as neuritis.  Id.  He recommended that the plaintiff wear more comfortable shoes, lose weight, use a heating pad or ice and perform stretching exercises.  Id.  He also suggested that the plaintiff could receive injections, take non-steroidal anti-inflammatory pain relievers, and stressed that custom made orthotics could significantly relieve her pain. (R. at 110-111.)

In March 2008, upon referral from the Division of
Disability, Dr. Justin Fernando performed an orthopedic
examination on the plaintiff.  (R. at 93.)  In his Consultative
Examination Report, Dr. Fernando, aware of the plaintiff's
medical history and complaints, observed that the plaintiff had
a normal gait, did not require an assistive device, did not need
help undressing or moving around during the exam, had full range
of motion in her shoulders, elbows, forearms, wrists, fingers,
hips, knees, and ankles.  (R. at 93-94.)  Dr. Fernando reported
that the plaintiff had some tenderness in her feet, and
ultimately diagnosed the plaintiff with tendinitis of the
tibialis posterior in both feet, plantar calcaneal spur by the
plaintiff's medical history, and obesity.  (R. at 95.)  He also
noted that "it is quite likely that extended walking would cause
[the plaintiff] considerable difficulty and pain." Id.  Dr.
Fernando's report also noted that, with the help of her
children, the plaintiff cooked at least three times a week,
cleaned, did laundry, goes shopping, takes care of her younger
children, and that she could shower bathe and dress daily.  (R.
at 93-94.)

Two days after Dr. Fernando's report, on March 26, 2008,
Dr. Seymour Sprayregen, a radiologist reported that the

plaintiff had "mild degenerative changes" and dorsal and plantar calcaneal spurs.  (R. at 96.)

### III.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record.  See 42 U.S.C. §§ 405(g), 1383(c); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 97 (1938)); see also Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

The analytical framework for evaluating claims of disability for DIB and SSI is defined by regulations of the Commissioner, which set forth a five-step inquiry.  See 20 C.F.R. §§404.1520, 416.920.  The Court of Appeals for the Second Circuit has described this five-step process as follows:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical capacity to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000)(internal citations omitted); see also Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Ruiz v. Barnhart, No. 03 Civ. 10128, 2006 WL 1273832, at *4-5 (S.D.N.Y. May 10, 2006).

The claimant bears the initial burden of proving that she is disabled within the meaning of the Act.  See 42 U.S.C. §§423(d)(5), 1382c(a)(3)(H)(i); see also Shaw, 221 F.2d at 132, Ruiz, 2006 WL 1273832, at *5.  This burden encompasses the first four steps described above.  See Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983).  If the claimant satisfies the burden

8

of proof through the fourth step, she has established a prima facie case and the burden shifts to the Commissioner to prove the fifth step.  See id. at 722-23.

When employing this five-step process, the ALJ "must consider" four factors in determining a claimant's entitlement to benefits: "(1) the objective medical facts; (2) diagnoses of medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others and (4) the claimant's educational background, age, and work experience."  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999)(citation omitted); see also Blaylock-Taylor v. Barnhart, No. 03 Civ. 3437, 2005 WL 1337928, at *6-8 (S.D.N.Y. June 6, 2005).

In the assessment of medical evidence, a treating physician's opinion is given controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2); Schissler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).  The Commissioner's regulations require that greater weight generally be given to the opinion of a treating rather than a non-treating physician.

9

IV.

In this case, judgment on the pleadings should be granted in favor of the Commissioner.  The ALJ carefully evaluated the plaintiff's claims of physical impairments and there is substantial evidence to support his determination that the plaintiff was not disabled under the Act.

The ALJ undertook the appropriate sequential inquiry in the plaintiff's case.  At step one, the ALJ correctly found that the plaintiff engaged in substantial gainful activity from December 2008 through the date of his decision, noting that, while not conclusive, the fact that she was still working despite her alleged disability was considered with all of the other evidence.  (R. at 9.)

At step two, the ALJ determined that the plaintiff had impairments that qualified as "severe" based on the requirements in the regulations.  Id.  The evidence established that the plaintiff suffered from tendonitis and fasciitis in both feet. Id.

At step three, the ALJ correctly determined that the plaintiff's impairments, although severe, did not meet or medically equal one of the listed impairments contained in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525,
404.1526, 416.925 and 416.926).  (R. at 10.)

　　At step four, the ALJ compared the plaintiff's residual
functional capacity to her past relevant work as a home health
aide and as a receptionist for community development.  (R. at
10.)  The ALJ determined that the plaintiff could perform "the
full range of sedentary work," as defined in 20 C.F.R.
404,1567(a) and 416.967(a).  Id.

　　The ALJ reached his conclusion after properly considering
the opinions of the physicians that treated the plaintiff.
After reviewing the plaintiff's medical history, the ALJ noted
that there was no opinion evidence from the treating doctor,
however, the consultative examiner concluded that extended
walking would cause the plaintiff "considerable difficulty and
pain," and the ALJ correctly determined that the physicians'
opinion was "in keeping with the residual functional capacity
for sedentary work."  (R. at 11.)

　　The ALJ also considered the plaintiff's subjective
complaints of severe pain and trouble sitting and standing.  The
ALJ concluded that, on the whole, the plaintiff's testimony as
to her disability was consistent with the impairments
established by the medical history and objective clinical

reports in the record; however, the plaintiff's testimony about the intensity, persistence and hindering effects of the symptoms was not credible.  (R. at 11.)  These findings are grounded in substantial evidence in the record as a whole.  The ALJ considered, for example, the facts that the plaintiff stopped working when she gave birth to her son and that she had recently returned to work "beyond the sedentary level."  (R. at 10-11.)

An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's pain.  See Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).  An ALJ's determination with respect to the credibility of witnesses is also given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses.  See Centano v. Apfel, 73 F. Supp. 2d 333, 338 (S.D.N.Y. 1999)("The ALJ's decision to discount plaintiff's subjective complaints of pain must be accepted by a reviewing court unless it is clearly erroneous."); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n. 6 (S.D.N.Y. 1995).

Because the plaintiff had the residual functional capacity to do her past relevant work as a receptionist, it was

12

unnecessary for the ALJ to proceed to the fifth step of the
analysis.

     In her opposition to the current motion, the plaintiff
alleges that she uses a cane.  However, Dr. Fernando noted that
the plaintiff uses no assistive devices.  (R. at 94.)  If the
plaintiff's condition has worsened, she can apply again for
benefits.

CONCLUSION

     There is substantial evidence in the record as a whole to
support the Commissioner's determination that the plaintiff is
not disabled under the Act, and is not entitled to disability
insurance benefits and Supplemental Security Income.  Therefore,
the defendant's motion for judgment on the pleadings is **granted**,
and the decision of the Commissioner is **affirmed**.

     The Clerk is directed to enter judgment dismissing the
complaint and closing this case.

**SO ORDERED.**

Dated:     New York, New York
           August / , 2011

                              John G. Koeltl
                         United States District Judge